<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

```
RASOOL JENKINS,                   :
                                  :  Civil Action No. 09-4989 (FLW)
              Plaintiff,          :
                                  :
                                  :
              v.                  :    **OPINION**
                                  :
COMMISSIONER GEORGE HAYMAN,       :
et al.,                           :
                                  :
              Defendants.         :
```

**APPEARANCES:**

> RASOOL JENKINS, Plaintiff <u>pro se</u>
> #126926/#982179B
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625

**WOLFSON**, District Judge

Plaintiff, Rasool Jenkins, a state inmate currently confined at the New Jersey State Prison in Trenton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.  BACKGROUND

Plaintiff, Rasool Jenkins ("Jenkins"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: George Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Administrator of Southern State Correctional Facility ("SSCF"); SSCF Special Investigation Division ("SID"); NJDOC Administrative Hearing Officer; State Correctional Officer ("SCO") Meyers; Sgt. Errickson; SCO Weinstein; SCO Hundt; SCO Wernik; SCO Labonne; SCO Manera; SCO Pruszinski; SCO Conrey; Sgt. Mikus; Nurse Headley, RN, Medical Department; John/Jane Does (Medical Personnel); and John/Jane Does (Custody Personnel).  (Complaint, Caption and ¶¶ 21-51).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Jenkins alleges that, on September 28, 2005, he and another prisoner were transferred from SSCF to Northern State Prison, based on an allegation by a confidential informant that plaintiff and the other inmate were planning to attack the prison guards in

a prison uprise.  Jenkins claims the informant's allegation was never investigated.  (Complaint, ¶¶ 3-4).  Almost three years later, on July 9, 2008, Jenkins was transferred back to SSCF.  That same day, SCO Weinstein approached plaintiff, telling Jenkins that he remembered Jenkins.  Weinstein asked to speak with Jenkins privately, but Jenkins declined because he did not want to look like a "snitch."  Weinstein suggested that another inmate accompany Jenkins, and one was picked to accompany Jenkins to the unit office with Weinstein.  Weinstein then told plaintiff that other officers were not too pleased to see Jenkins again because of the past rumor about planning an uprising.  He also told Jenkins that there are good guards and bad guards.  (Compl., ¶¶ 5-9).

After his conversation with Weinstein, Jenkins returned to his tier and began a conversation with another inmate.  SCO Myers walked up to plaintiff and the other inmate and told them he wanted to search the cubicle area and they had to leave.  Before leaving, Myers stated that he had to conduct a pat-down search.  Myers searched the other inmate and allowed him to leave.  Then he ordered Jenkins to turn and put his hands up in the air.  Myers started to pat down Jenkins, but upon reaching plaintiff's waist, Myers "quickly bear hugged plaintiff and picked plaintiff up and slammed plaintiff backwards onto the floor, holding plaintiff to the floor."  Immediately, SCO Hundt and other

3

officers began to assault plaintiff while Weinstein watched and did nothing for several minutes before calling a "Code 33." Plaintiff states that he sustained serious head and skull, facial and bodily injuries, and that he lapsed in and out of consciousness during the attack.  He was hand-cuffed while lying on the floor and Myers began ramming Jenkins' head into the floor.  Another officer began twisting Jenkins' ankle until it felt like it broke.  Jenkins was lifted into the air by three officers and others began to punch plaintiff's face three or four times.  Then they used plaintiff's head as a "battery-ram" to open up doors on their way to the outside, causing plaintiff's head to split open.  (Compl., ¶ 53, at pp. 29, 29A and 29B).

Jenkins asserts that defendants retaliated against him by bringing false disciplinary charges against him and placing him in isolation (Administrative segregation) to cover up the assault on plaintiff, in violation of his First and Fourteenth Amendment rights.  Jenkins also alleges a claim of excessive force in violation of his Eighth Amendment right against cruel and unusual punishment.  (Compl., First and Second Claims, ¶¶ 54-64).

Jenkins further asserts that defendants failed to protect him and failed to provide medical care in violation of the Eighth Amendment.  (Compl., Third Claim, ¶¶ 65-68).

In his Fourth and Fifth Claims for relief, Jenkins asserts that defendants deprived him of procedural due process by keeping

4

plaintiff in administrative segregation without conducting a
proper and adequate investigation of the incident and the false
charges brought by the officers to cover up their assault of
plaintiff.  Jenkins alleges that the hearing officer denied
plaintiff a fair hearing and "just accepted the
Administration/Custody and SID version and process plaintiff's
hearing in accordance with this mind-set and thus the continued
illegal odyssey of Administrative Segregation," in violation of
Jenkins' right to due process under the Fourteenth Amendment.
(Compl., Fourth and Fifth Claims, ¶¶ 69-80).

In his Sixth Claim, Jenkins alleges that Sgt. Flickinger and
Sgt. Errickson instructed the medical personnel to fabricate
plaintiff's medical records by noting that he had only a few
scratches and bruises.  Nurse Headley knew plaintiff's injuries
were much more serious and did nothing to treat plaintiff
accordingly, in violation of the Eighth Amendment.  (Compl.,
Sixth Claim, ¶¶ 81-83).

Jenkins seeks declaratory and injunctive relief, namely, to
enjoin defendants from future retaliatory acts.  He also asks for
punitive damages in excess of $75,000.00 against each defendant.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-
134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),
requires a district court to review a complaint in a civil action

in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Recently, the Supreme Court revised the standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  <u>Id</u>.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Fed.R.Civ.P.</u> 8(a)(2).[1]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

discovery for a plaintiff armed with nothing more than
conclusions.  Second, only a complaint that states a
plausible claim for relief survives a motion to dismiss.
Determining whether a complaint states a plausible claim for
relief will ... be a context-specific task that requires the
reviewing court to draw on its judicial experience and
common sense.  But where the well-pleaded facts do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged-but it has not
"show[n]"-"that the pleader is entitled to relief."  Fed.
Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

a court considering a motion to dismiss can choose to begin
by identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth.
While legal conclusions can provide the framework of a
complaint, they must be supported by factual allegations.
When there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

    Thus, to prevent a summary dismissal, civil complaints must

now allege "sufficient factual matter" to show that a claim is

facially plausible.  This then "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged.  Id. at 1948.  The Supreme Court's ruling in

Iqbal emphasizes that a plaintiff must demonstrate that the

allegations of his complaint is plausible.  Id. at 1949-50; see

also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside,

___ F.3d ___, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

    Consequently, the Third Circuit observed that Iqbal provides

the "final nail-in-the-coffin" for the "no set of facts" standard

set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before <u>Twombly</u>. <u>Fowler</u>, 2009 WL 2501662, *5. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in <u>Iqbal</u> when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [<u>Iqbal</u>, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [<u>Id</u>.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. <u>See Phillips</u>, 515 F.3d at 234-35. As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" <u>Iqbal</u>, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>.

<u>Fowler</u>, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this <u>pro se</u> pleading must be construed liberally in favor of Plaintiff, even after <u>Iqbal</u>. See <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to

---

[2] In <u>Conley</u>, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Id</u>., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

amend, unless it finds bad faith, undue delay, prejudice or
futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-
111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.
2000).

### III.   SECTION 1983 ACTIONS

Jenkins brings this action pursuant to 42 U.S.C. § 1983.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

### IV.   ANALYSIS

A.  Excessive Force Claim

Jenkins' allegations suggest that he is asserting a claim
that the defendant correctional officers used excessive force
against him in violation of the Eighth Amendment because he is a
convicted prisoner.  See Graham v. Connor, 490 U.S. 386, 392-394

10

(1989)(cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment).

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Id. at 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer, 511 U.S. at

11

834 (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); <u>Rhodes</u>, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  <u>Hudson</u>, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  <u>Quoted in</u> <u>Hudson</u>, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  <u>Id.</u> at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than <u>de minimis</u> force is used.  <u>Id.</u> at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not <u>de minimis</u> for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted";

12

> (4) "the extent of the threat to the safety of staff
> and inmates, as reasonably perceived by responsible
> officials on the basis of the facts known to them"; and
> (5) "any efforts made to temper the severity of a
> forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force

is "excessive" and will give rise to the level of a

constitutional violation.  See Hudson, 503 U.S. at 9 (it is clear

that not "every malevolent touch by a prison guard gives rise to

a federal cause of action").  Therefore, "[n]ot every push or

shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights."

Id. at 9-10.

    Here, the allegations of the Complaint suggest that

defendants'[3] assault against Jenkins was malicious and excessive

because Jenkins alleges that he did nothing to provoke the

attack.  Instead, the attack allegedly was based on a three-year

old incident where plaintiff was falsely accused of conspiring

with another inmate to start a prison uprising against the guards

at SSCF.  Further, Jenkins asserts that he sustained serious

injuries, skull, head and facial injuries and unconsciousness,

where his head purportedly "split open," thus suggesting that his

injuries were not de minimis.[4]  Therefore, based on the

_____

    [3]  The named defendants participating in the assault are:
Sgt. Meyers, Sgt. Errickson, Sgt. Hundt, SCO Wernik, SCO Labonne,
SCO Manera, SCO Pruszinski, SCO Conrey, and Sgt. Mikus.

    [4]  "[T]he Eighth Amendment analysis must be driven by the
extent of the force and the circumstances in which it is applied;

allegations in the Complaint, if true, it would appear that Jenkins has asserted facts sufficient to suggest that defendants exhibited malicious and sadistic conduct intended to cause plaintiff pain.  Such conduct, if true, is "repugnant to the conscience of mankind" absent extraordinary circumstances necessary to justify that kind of force.  <u>Hudson</u>, 503 U.S. at 10.

---

not by the resulting injuries." <u>Smith v. Mensinger</u>, 293 F.3d 641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied maliciously and sadistically to cause harm.  <u>Id</u>. at 649; <u>Brooks</u>, 204 F.3d at 106.  Otherwise, an inmate "could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted" in injuries that were <u>de minimis</u>.  <u>Id</u>.

B.  <u>Failure to Protect Claim</u>

Jenkins also asserts that defendants, Hayman, SSCF Administrator, the SSCF SID, and SCO Weinstein, failed to protect him from the harm committed by the correctional officers. Jenkins appears to argue that these defendants failed to protect him by placing plaintiff in a dangerous environment at a known or potential risk of serious harm.

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," <u>Farmer</u>, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, <u>Id.</u> at 837.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  <u>Riley v. Jeffes</u>, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious."  <u>Farmer</u>, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  <u>Farmer</u>, 511 U.S. at 834.

Jenkins alleges that Weinstein was aware of the pending assault of plaintiff by other correctional officers, and did nothing to stop it or intervene.  He also alleges that defendants, Hayman, the SSCF Administrator, and SID had personal knowledge of the brutality of the correctional officers and knowingly returned plaintiff to SSCF, where he was assaulted because of his alleged involvement in planning a prison uprising. Accordingly, these allegations would appear to place Jenkins at risk of serious harm from the correctional officers, especially after Weinstein warned plaintiff about some bad correctional officers.  These allegations, if true, may be sufficient, at this early screening stage, to withstand dismissal because the allegations tend to show that defendants were informed, knew, or should have known about the threat to plaintiff's safety from the "bad" officers, and did nothing to prevent or alleviate plaintiff's exposure to such potential harm.  See Nami, 82 F.3d at 67-68; Farmer, 511 U.S. at 842; accord Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F. Supp. 193, 199-200 (D.N.J. 1997).  Accordingly, plaintiff's Eighth Amendment failure to protect claim will be allowed to proceed against these several defendants at this time.

C.   Denial of Medical Care Claim

Next, Jenkins appears to allege a denial of medical care claim against Nurse Headley and John or Jane Doe medical personnel at SSCF.

16

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro,

17

834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would

be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Jenkins alleges that Headley and the medical personnel did not treat him for his serious injuries from the assault, even though he was brought to the medical unit and lay there bleeding. He further alleges that Headley was aware that plaintiff was assaulted by correctional officers and was told to cover-up the true extent of plaintiff's injuries. (Compl., ¶¶ 49-51, and Sixth Claim at pp. 39-40).

It would appear that Jenkins may be able to support the first prong under the Estelle test, given that he was bleeding and semi-conscious.  At the very least, the extent of plaintiff's injuries is a fact question that does not appear to be subject to summary dismissal based on the allegations of the Complaint at this preliminary stage.

Further, Jenkins may have alleged facts sufficient to support a claim that the medical defendants were deliberately indifferent to his medical needs from the assault.  The refusal to treat plaintiff for his injuries for no reason other than to cover-up the misconduct of the correctional officers suggests deliberate indifference that would rise to the level of a constitutional deprivation.  Thus, at this preliminary stage, the Court will allow plaintiff's denial of medical care claim to proceed against defendants Headley and the John/Jane Doe medical personnel.

D.   False Disciplinary Charges

Jenkins contends that he was falsely charged with a disciplinary infraction to conceal the fact that he was brutally attacked by the correctional officers without provocation.

The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted

a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974),[5] then the prisoner has not suffered a constitutional violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided").

In this case, Jenkins does not allege that he was denied an institutional disciplinary hearing or an opportunity to present evidence to refute the charges.  Rather, he admits that he had a hearing but the Administrative Hearing Officer did not independently investigate the matter and relied only on the

---

[5]   In Wolff v. McDonnell, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  In this case, there are no allegations that Plaintiff was denied these due process requirements.

21

report of the officers, disregarding plaintiff's allegations.[6]
Consequently, there are no factual allegations of wrongdoing that
would rise to the level of a constitutional deprivation in order
to support a claim of false disciplinary charges, and such claim
will be dismissed, as against all named defendants, for failure
to state a claim upon which relief may be granted.

E.   Denial of Disciplinary Due Process Claim

        Jenkins also asserts that he was denied procedural due
process in connection with his prison disciplinary proceedings.
He asserts this claim with respect to defendants, SSCF
Administrator, the SID, and the Administrative Hearing Officer.
As noted above, the Due Process Clause of the Fourteenth
Amendment provides that liberty interests of a constitutional
dimension may not be rescinded without certain procedural
protections.  U.S. CONST. amend. XIV.  In Wolff, the Supreme Court
set forth the requirements of due process in prison disciplinary
hearings.  An inmate is entitled to (1) written notice of the
charges and no less than 24 hours to marshal the facts and
prepare a defense for an appearance at the disciplinary hearing;
(2) a written statement by the fact finder as to the evidence

_____

        [6]  Indeed, inmates do not have an absolute federal
constitutionally-protected right to confront and cross-examine
witnesses at their prison disciplinary hearings.  Wolff v.
McDonnell, 418 U.S. at 567-68.  See also Baxter v. Palmigiano,
425 U.S. 308, 321-22 (1976); Young v. Kann, 926 F.2d 1396, 1404
(3d Cir. 1991); Sanchez v. Roth, 891 F. Supp. 452, 458-59
(N.D.Ill.1995); Harrison v. Pyle, 612 F. Supp. 850, 854-55 (D.
Nev. 1985).

relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994)(citing Wolff, 418 U.S. at 563-72). However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, Jenkins does not allege that he did not receive notice of the disciplinary charge, that he was denied the right to call witnesses and provide documentary evidence, or that he did not receive a written statement by the hearing officer as to the evidence relied upon or the reasons for the disciplinary action. Rather, Jenkins simply takes issue with the fact that SID and the hearing officer did not conduct an independent investigation into the charges against the officers.  Thus, it would appear that Jenkins is attempting to challenge the disciplinary charge itself as untrue.  To the extent that Jenkins is challenging the result

23

of the disciplinary proceedings in alleging that the disciplinary charge is false, such claim must be dismissed, for the reasons stated above in subsection D, _supra_.

As to Jenkins' argument that he has been wrongly placed in administrative segregation in violation of his disciplinary due process rights, this Court also finds that plaintiff has failed to state a cognizable claim of constitutional dimension.

A plaintiff may establish a due process violation by demonstrating that he was deprived of a protected liberty interest. _Fraise v. Terhune_, 283 F.3d 506, 522 (3d Cir. 2002). Liberty interests may arise either from the Due Process clause itself or from state-created entitlements. _Shoats v. Horn_, 213 F.3d 140, 143 (3d Cir. 2000). When the degree of confinement or conditions to which an inmate is subjected are within the sentence imposed and do not otherwise violate the Constitution, the inmate's rights under the Due process clause generally are not implicated. _Fraise_, 283 F.3d at 522. However, a state-created liberty interest may be unconstitutionally deprived when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." _Sandin v. Conner_, 515 U.S. 472, 484 (1995). Lesser restraints on an inmate's freedom are deemed to fall "within the expected parameters of the sentence imposed by a court of law." _Id_. Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed

24

upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Sandin, 515 U.S. at 480.  See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).  Administrative or punitive segregation typically does not implicate either the Due Process clause or a state-created liberty interest.  See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); Torres, 292 F.3d at 150-52.

The Third Circuit has observed, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that factor should be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection.  Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997)(disciplinary segregation of state prisoner for 15 months did not impose atypical and significant hardship on prisoner, and thus, did not implicate the due process clause).  Here, Jenkins does not contend that his placement in administrative segregation for more than one year has been a significant or atypical hardship.  Indeed, he does not demonstrate "atypical or significant hardship" of any kind necessary to implicate the due process clause.  Therefore, this denial of disciplinary due process claim will be dismissed with prejudice for failure to

state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

F.  Retaliation Claim

Finally, it also appears that Jenkins is asserting a claim that defendants wrongly retaliated against him, by filing a false disciplinary charge against him and covering up the assault by the correctional officers.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

Based on the allegations set forth in the Complaint, if true, Jenkins may be able to support a claim of retaliation.  He

26

alleges that shortly after he complained about the assault, he was facing disciplinary charges that purportedly were not true.

A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally protected activity for purposes of a retaliation claim.  See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981)(retaliation for exercising right to petition for redress of grievances states a cause of action for damages under the constitution); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995)(prison officials may not retaliate against an inmate for complaining about a guard's misconduct), cert. denied, 516 U.S. 1084 (1996).  Therefore, because plaintiff appears to allege that the retaliation was the result of his complaints concerning his administrative segregation, and that SID was not investigating the assault by the correctional officers, he appears to meet the requisite elements of a retaliation claim.  Namely, Jenkins has alleged (1) a constitutionally protected activity, (2) that he was subjected to adverse action by defendants, disciplinary action and administrative segregation, and (3) that his complaints about the lack of an investigation into his charges of assault were the motivating force in the defendants' decision to take adverse action against plaintiff.  Accordingly, the Court will allow this claim to proceed at this time.

G.  Appointment of Counsel

Jenkins also filed a motion for appointment of counsel. Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law. ... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
>
> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.
>
> [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).]  This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.
>
> Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases.  Id. at 157.

Parham, 126 F.3d at 457-58.

Applying these factors to this case, the Court is not inclined to allow appointment of counsel at this time. Plaintiff's complaint is only recently filed, and while this

Court has screened the Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the merits of plaintiff's claims, the factual and legal issues, "have not been tested or developed by the general course of litigation, making [a number of factors] of Parham's test particularly difficult to evaluate." Chatterjee v. Philadelphia Federation of Teachers, 2000 WL 1022979 at *1 (E.D. Pa. July 18, 2000)(stating that unlike Parham, which concerned a directed verdict ruling, and Tabron, which involved summary judgment adjudication, plaintiff's claims asserted in complaint and motions "have barely been articulated" and have distinctive procedural posture).

With regard to the Tabron/Parham factors, Jenkins has not demonstrated at this stage of proceedings, the complexity of legal issues, the degree to which factual investigation will be necessary, or that he will be in need of expert witnesses. Likewise, in the case at issue, the Court finds that Jenkins is capable of presenting the claims at this early stage. He has presented to this Court without the assistance of counsel a well-articulated and coherent Complaint. The Court recognizes that issues may arise in the course of this litigation which may raise a question as to Jenkins' need for counsel, for instance, the possible need for expert witnesses, if the case proceeds to that stage of discovery. In that instance, the Court will consider a renewed motion for appointment of counsel. At this point in the

litigation, however, the plaintiff's motion for appointment of counsel will be denied, without prejudice.

V.   <u>CONCLUSION</u>

For the reasons set forth above, plaintiff's claims alleging false disciplinary charges and denial of disciplinary due process will be dismissed in its entirety, as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  However, plaintiff's claims alleging excessive force, failure to protect, denial of medical care and retaliation, will be allowed to proceed at this time.  His request for appointment of counsel will be denied without prejudice at this time.   An appropriate order follows.


 s/Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge

Dated: April 29, 2010