<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RASOOL JENKINS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 09-4989 (MAS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GEORGE W. HAYMAN, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**APPEARANCES:**

**RASOOL JENKINS, Plaintiff pro se**
#982179B
South Woods State Prison/6-2-L
215 Burlington Road South
Bridgeton, New Jersey 08302

**JUSTIN L. CONFORTI, ESQ.**
OFFICE OF THE N.J. ATTORNEY GENERAL
Department of Law
R.J. Hughes Justice Complex
25 market Street, P.O. Box 112
Trenton, New Jersey 08625
Counsel for Defendants Hayman, McGovern, Warren, Hundt, Mikus, Myers, Errickson,
Pruszinski, Conrey, Wernik, Labonne, Weinstein, Manera and Headley

**SHIPP, District Judge**

This matter is before the Court pursuant to a motion for summary judgment (Docket entry

no. 81) filed on behalf of the named Defendants in this action.  Plaintiff has not filed any

opposition to Defendants' motion at this time.  This motion will be decided on the papers, without

oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below,

Defendants' motion for summary judgment will be granted in part and denied in part. Specifically, Defendant's motion for summary judgment will be granted in favor of all defendants on claims asserted against them in their official capacities. Defendants also are entitled to summary judgment with respect to Plaintiff's retaliation claim. Further, Defendants Headley and Flickinger are entitled to summary judgment on the denial of medical care claim; Defendants Wernik and Errickson are entitled to summary judgment on the failure to protect claim; and Defendant Hayman will be granted summary judgment based on supervisor liability. Defendants' motion for summary judgment will be denied, however, with respect to the excessive force and failure to intervene claims as asserted by Plaintiff against Defendants Myers, Weinstein, Hundt, Labonne, Manera, Pruszinski, Conrey, and Mikus.

## I.  **BACKGROUND**

A.  Procedural History

On or about September 30, 2009, Plaintiff, Rasool Jenkins, filed this civil rights Complaint, pursuant to 42 U.S.C. § 1983, against the following defendants: George Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Charles Warren, Administrator of Southern State Correctional Facility ("SSCF"); SSCF Special Investigation Division ("SID"); James McGovern, NJDOC Administrative Hearing Officer; State Correctional Officer ("SCO") Meyers; Sgt. Errickson; SCO Weinstein; SCO Hundt; SCO Wernik; SCO Labonne; SCO Manera; SCO Pruszinski; SCO Conrey; Sgt. Mikus; Nurse Headley, RN, Medical Department; John/Jane Does (Medical Personnel); and John/Jane Does (Custody Personnel). (Dkt. # 1, Complaint, Caption and ¶¶ 21-51).  In his Complaint, Plaintiff alleges that, on July 9, 2008, while he was confined at SSCF, he was physically assaulted by several Defendant officers during a

2

pat down search, in retaliation for Plaintiff's purported involvement in a prior incident at SSCF in 2005, in which Plaintiff allegedly threatened a SSCF officer.   Plaintiff further alleges that he was charged with false disciplinary infractions to whitewash the assault by the correctional officers. Plaintiff also alleges that he was denied proper medical care for his injuries after the physical assault.   (Dkt. # 1.)

In an Opinion and Order, entered on May 6, 2010 (Dkt. ## 5, 6), the Honorable Freda L. Wolfson, U.S.D.J., dismissed the claims of false disciplinary charges and denial of disciplinary due process as asserted against all named Defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.   Judge Wolfson allowed Plaintiff's claims to proceed in which he asserted Eighth Amendment violations of use of excessive force, failure to protect and denial of medical care, as well as Plaintiff's retaliation claim.   (Dkt. # 5.)

On March 31, 2011, an Answer was filed on behalf of the Defendants.   (Dkt. # 49.) Plaintiff's deposition was taken on March 20, 2012.   Discovery concluded on or about March 26, 2012.   In an Order entered on April 18, 2012, the Honorable Lois H. Goodman, U.S.M.J., denied Plaintiff's request for an extension of fact discovery and for production of unredacted documents. (Dkt. # 72.)   The case was re-assigned to the undersigned on July 30, 2012.   (Dkt. # 79.)   One month later, on August 31, 2012, Judge Goodman denied Plaintiff's renewed requests for unredacted documents concerning 2005 reports, including informant identities.   (Dkt. # 80.) Judge Goodman also denied Plaintiff's request for the disciplinary records of Defendants Warren and Pruszinski, and denied Plaintiff's request to extend fact discovery.   Judge Goodman did permit Plaintiff's request for depositions of Defendants, the costs and arrangements to be borne by Plaintiff, or alternatively, depositions by written questions, pursuant to Fed.R.Civ.P. 31, but these

depositions were limited so that Plaintiff could not probe areas already designated as confidential, nor could Plaintiff pursue questioning in other areas that had been denied previously.   (Dkt. # 80.)

On November 21, 2012, Defendants filed this motion for judgment on the pleadings, or alternatively, for summary judgment.   (Dkt. # 81.)   Plaintiff has not responded to Defendants' motion.

B.   Statement of Facts

The following facts are derived from the Defendants' Statement of Material Facts, submitted with their motion for summary judgment, pursuant to Fed.R.Civ.P. 56(c).   Plaintiff has not responded to the Defendants' motion, and therefore, has not submitted a statement of material facts in dispute.

On July 9, 2008, Plaintiff was a state inmate confined at SSCF.   (Declaration of Brenda A. Hutton ("Hutton Decl."), Exhibit A, DOC JENKINS 266.)   The named Defendants Myers, Hundt, Pruszinski, Conrey, Wernik, Labonne, Weinstein and Manera were senior correctional officers ("SCO"), who were assigned to work at SSCF on July 9, 2008.   Defendants Mikus and Erickson were sergeants also assigned to work at SSCF on July 9, 2008.   Defendant Headley was a nurse employed by Correctional Medical Services ("CMS"), who was assigned to work at SSCF on July 9, 2008.   (Declaration of Salvatore Leto ("Leto Decl."), Ex. A.)

On July 9, 2008, at about 5:15 p.m., Myers was clearing the D-Wing in Unit 2 at SSCF when he observed Plaintiff hide something in a footlocker.   Myers instructed Plaintiff to stop and submit to a pat frisk.   While the frisk was being conducted, Myers saw Plaintiff toss something to the ground.   When Myers questioned Plaintiff about the tossed item, Plaintiff struck Myers in the

head with his elbow.  (Declaration of Jeffrey Beebe ("Beebe Decl."), Ex. A, DOC JENKINS 159.)

SCO Hundt, who had been standing at the end of D-Wing in Unit 2 before the incident occurred, saw Plaintiff strike Myers in the head and went to assist Myers in restraining Plaintiff. Plaintiff physically resisted the attempt to restrain him, and a scuffle ensued, which resulted in a Code 33 being called.  (*Id.*, DOC JENKINS 172.)  SCOs Pruszinski, Conrey, Weinstein, Labonne and Manera, and Sgt. Mikus responded to the Code 33 to assist Myers and Hundt in subduing Plaintiff.  (*Id.*, DOC JENKINS 179.)

Sgt. Mikus reported that, when he arrived on the scene, Plaintiff was on the floor resisting the attempt of several SCOs to restrain him.  Mikus further reported that Plaintiff became "combative" and pulled his arms away from the officers when they tried to handcuff Plaintiff. (*Id.*)  Mikus stated that "every chance [the officers] had to de-escalate the level of force required to contain the situation, [Plaintiff] would begin flailing around with his arms and legs," including an attempt to wrap his legs around the bottom bunk to gain leverage against the officers.  (*Id.*)

In the post-incident reports completed by the officers who had responded to the Code 33, all officers stated that Plaintiff was "combative" throughout the effort to restrain him by disobeying verbal orders and by kicking the officers who tried to handcuff Plaintiff.  (*Id.*, DOC JENKINS 172, DOC JENKINS 173, DOC JENKINS 175, DOC JENKINS 177.)  SCO Pruszinski reported that it "took a lot of time [to handcuff Plaintiff] due to the amount of resistance" from him.  However, once he was handcuffed, the officers were able to get Plaintiff to his feet.  (*Id.*, DOC JENKINS 173.)

5

Sgt. Mikus reported that Plaintiff continued to resist and was uncooperative as he was being escorted from the area of the incident.   Specifically, Mikus stated that "each time his feet touched the floor [Plaintiff] attempted to push the escorting officers around the wing into the walls."   (*Id.*, DOC JENKINS 179.)   Plaintiff also kicked off the floor and walls near the unit door as they were exiting the unit so as to cause the escorting officers to stumble.   Consequently, the officers secured Plaintiff's legs and placed him in a "lock-up" cart to be removed from the unit courtyard.   (*Id.*)

Defendants Myers, Hundt and Pruszinski were examined by Nurse Bender on July 10, 2008.   Nurse Bender reported that Myers had "mild swelling to the area" of his forehead where he was elbowed by Plaintiff.   (*Id.*, DOC JENKINS 199.)   Hundt had a contusion to his scalp, and Pruszinski suffered a bruise on his scalp and contusions to his upper right arm and shoulder blade. (*Id.*, DOC JENKINS 205, 206.)

Immediately after the altercation, Plaintiff was taken to a detention holding cell.   Nurse Sweeney tried to evaluate Plaintiff for injuries, but could not get a visual assessment because Plaintiff continued to demonstrate "violent behavior."   (*Id.*, DOC JENKINS 536.)   Later, at about 8:00 p.m., Plaintiff was transferred to a second, larger holding cell without incident.   (*Id.*, DOC JENKINS 183, 167.)

Defendant Headley then went to Plaintiff's second holding cell to examine him.   She observed swelling to his head, a three to four inch laceration to the top of his scalp, and swelling and bruising to Plaintiff's left eye.   Headley also lifted up Plaintiff's T-shirt and saw a small circular abrasion on his left shoulder.   Headley's observations were noted in Plaintiff's electronic medical record ("EMR").   (*Id.*, DOC JENKINS 167.)

In a post-incident report, Headley noted that Plaintiff alleged that Sgt. Flickinger, who also was present during her examination of Plaintiff, had instructed medical personnel not to document any injuries. Headley further noted that Plaintiff's accusation concerning Flickinger was "not factual" and that she had recorded every injury she observed on Plaintiff's body. (*Id.*) Headley provided her findings to the on-call doctor, who then medically cleared Plaintiff for transport to another facility. (*Id.*, DOC JENKINS 535.) Headley reported that she watched Plaintiff walk out of the holding cell without difficulty and then push against escort staff, forcing them into railings. (*Id.*, DOC JENKINS 107.)

Plaintiff was placed in the transport van without further incident. (*Id.*, DOC JENKINS 183.) When Plaintiff arrived at New Jersey State Prison, at approximately 11:45 p.m., he was taken to the infirmary and examined by Nurse Regina Jones. Jones noted abrasions to Plaintiff's head and a swollen left eye. (Declaration of Ralph Woodward ("Woodward Decl."), Ex. A, DOC JENKINS 535.) While Plaintiff complained about bruises to his back and legs, Jones did not see any bruising. (*Id.*, DOC JENKINS 534.)

After his admission to the infirmary, Plaintiff was seen every three to four hours by CMS nurses, who took his vital signs, documented his condition and provided him with pain medication, such as Tylenol, Motrin and acetaminophen-codeine for complaints of back and leg pain. (*Id.*, DOC JENKINS 433-533.) On July 10, 2008, Dr. Abu Ahsan examined Plaintiff and noted "superficial lacerations and abrasions" on Plaintiff's scalp. He prescribed Plaintiff with pain medication for his complaints of headaches, and ordered that Plaintiff remain in the infirmary for continued monitoring. (Id., DOC JENKINS 528, 529.)

On July 11, 2008, Dr. Ahsan diagnosed Plaintiff with a possible nasal fracture, and ordered x-rays for Plaintiff's nose and for Plaintiff's right hand after Plaintiff complained of pain.  (*Id.*, DOC JENKINS 515, 508.)   The nasal x-ray showed a non-displaced fracture that did not require medical intervention.  (Id., DOC JENKINS 462, 440.)   The x-ray of Plaintiff's right hand did not disclose any fracture or destructive bone lesion.  (*Id.*, DOC JENKINS 441.)   Plaintiff was discharged from the infirmary on July 19, 2008.  (Id., DOC JENKINS 444.)

On July 10, 2008, Plaintiff was charged with committing prohibited acts *.002 (assaulting any person), *.306 (conduct which disrupts or interferes with the security or orderly running of the correctional facility), and *.205 (misuse of authorized medication).  (Beebe Decl., Ex. A, DOC JENKINS 148, 153, 158.)   A hearing was conducted and on July 17, 2008, Defendant McGovern, a New Jersey State Prison Hearing Officer, found Plaintiff guilty of all prison disciplinary charges.  (*Id.*, DOC JENKINS 152, 157, 162.)    Plaintiff filed an administrative appeal, and on August 20, 2008, the New Jersey Department of Corrections ("NJDOC") upheld McGovern's finding of guilt on all charges.  (*Id.*, DOC JENKINS 237.)

Plaintiff then filed an appeal from the NJDOC's final agency decision to the Superior Court of New Jersey, Appellate Division.   On November 13, 2009, the Appellate Division affirmed.  *See Jenkins v. New Jersey Dep't of Corr.*, 2009 N.J. Super. Unpub. LEXIS 2826 (App. Div. Nov. 13, 2009), cert denied, 207 N.J. 227 (2011) (*see* Declaration of Justin L. Conforti ("Conforti Decl."), Ex. A.).   Specifically, the Appellate Division found that Plaintiff had assaulted Myers and was in possession of unauthorized medication.[1]   The Appellate Division further found that the reports and testimony relied upon by Defendant McGovern provided the

---

[1] The item that Myers observed Plaintiff throw to the ground during the pat frisk was later identified as three white pills inscribed with "IBU 800," which Plaintiff had not been issued by the medical staff.  (Beebe Decl., Ex. A, DOC JENKINS 159.)

"required 'substantial' evidence to support the disciplinary violations against" Plaintiff.  *Id.* at *4.

The Appellate Division also determined that Plaintiff was accorded with all applicable due process

rights during his disciplinary proceedings.  *Id.*

## II.  <u>ANALYSIS</u>

A.  <u>Legal Standard for Rule 12(c) and Summary Judgment Motions</u>

1.  *Rule 12(c) Standard*

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but

early enough not to delay trial—a party may move for judgment on the pleadings."   A court will

grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains

and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 12(c); *Sikirica v.*

*Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).   The standard governing a Rule 12(c)

motion is the same standard governing motions to dismiss under Rule 12(b)(6).   *Allah v. Hayman*,

No. 11-2460, 2011 U.S.App. LEXIS 17860, at *8, 2011 WL 3734233 (3d Cir. Aug. 25, 2011);

*Spruill v. Gillis*, 372 F.3d 218, 223 n. 2 (3d Cir. 2004); *S.M. v. Marlboro Tp. Bd. Of Educ.*, No. 10–

4490 (MAS), 2013 WL 2405438, at *2 (D.N.J. May 31, 2013).

A district court should conduct a three-part analysis when deciding a Rule 12(b)(6) motion.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).   "First, the court must 'take note of the

elements a plaintiff must plead to state a claim.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675

(2009)).   Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations

and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*,

578 F.3d 203, 210–11 (3d Cir. 2009).   Finally, once the well-pleaded facts have been identified

and the conclusory allegations ignored, a court must next determine whether the "facts alleged in

the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). While factual allegations must be more than speculative, "the [plausibility] standard is not akin to a 'probability requirement.'" *Covington v. International Association of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Because Defendants are relying on facts outside of the pleadings, the motion to dismiss under Rule 12(c) is moot.

### 2. *Summary Judgment Standard*

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits ... or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Fed.R.Civ.P.* 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. Id. at 248–49. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48. "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012) (citation omitted).

## B. Eleventh Amendment Immunity

Defendants first argue that they are entitled to dismissal of Plaintiff's official capacity claims for two reasons: (1) because as state officials/employees, they are not "persons" amenable to suit under 42 U.S.C. § 1983; and (2) because the claims against them in their official capacities are barred by the Eleventh Amendment.

The Eleventh Amendment protects a state or state agency from a federal suit regardless of the relief sought, unless Congress has specifically abrogated the state's immunity or the state has waived its own immunity. *Matthews v. Norristown State Hosp.*, No. 13-1231, --- F. App'x ----, 2013 WL 2479601, *2 (3d Cir. Jun. 10, 2013) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)); *MCI Telecomm. Corp. v. Bell Atl.–Pa.*, 271 F.3d 491, 503–04 (3d Cir. 2001). This immunity protects both states and state agencies "as long as the state is the real party in interest." *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc). New Jersey has not waived its immunity in federal court. *Harper-Bey v. New Jersey*, No. 12-3161, 2013 WL 341261 (3d Cir. Jan. 30, 2013).

To determine whether the immunity applies, a court considers: "(1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (citing *Fitchik*, 873 F.2d at 659). Section 1983 does not abrogate states' immunity. *See Quern v. Jordan*, 440 U.S. 332, 340–41 (1979). Furthermore, "[i]ndividual state

11

employees sued in their official capacity are also entitled to Eleventh Amendment immunity." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010).

As the aforesaid case law makes clear, Plaintiff's claims against the individual Defendants in their official capacities must be dismissed with prejudice because they are prohibited by the Eleventh Amendment. *Accord Horne v. District Attorney York County*, 499 F. App'x 140, 142 (3d Cir. 2012).

C.   Failure to Exhaust Administrative Remedies

Next, Defendants assert that the Complaint must be dismissed because Plaintiff failed to properly exhaust his administrative remedies.   The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 ... by a prisoner confined in any ... correctional facility until [all] administrative remedies [that] are available are exhausted." 42 U.S.C. § 1997e(a).   The exhaustion requirement is mandatory.   *See Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."); *Concepcion v. Morton*, 306 F.3d 1347, 1348–49 (3d Cir. 2002) (holding that prison grievance procedures are administrative remedies that must be exhausted under the PLRA before bringing suit).

That means a prisoner must show compliance with his prison's specific grievance procedures prior to filing suit.   *Drippe*, 604 F.3d at 781.   *See also Jones v. Bock*, 549 U.S. 199, 218 (2007) (compliance with prison grievance procedures is sufficient to properly exhaust); *Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules.").   The Third Circuit has held that the grievance procedure set

forth in the prison handbook is an "administrative remedy" within the meaning of the PLRA exhaustion provision and must be exhausted before a prisoner may pursue a section 1983 claim involving prison conditions and incidents. *Concepcion*, 306 F.3d at 1354–55. It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones, supra.* This stricture applies to claims of deliberate indifference to medical needs, such as the claims Plaintiff raises here. *See, e.g., Watts v. Herbik*, 364 F. App'x 723, 724 (3d Cir. 2010) (affirming dismissal of deliberate indifference claim where plaintiff failed to exhaust administrative remedies). "The availability of administrative remedies to a prisoner is a question of law." *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (quoting *Ray v. Kertes*, 285 F.3d 287, 291 (3d Cir. 2002)).

However, while administrative exhaustion is a mandatory prerequisite to the filing of a Section 1983 action by a prisoner, "failure to exhaust is an affirmative defense ..., and ... inmates are not required to ... demonstrate exhaustion." *Jones*, 549 U.S. at 216. If failure to exhaust administrative remedies is shown, a motion for summary judgment may be granted, *see, e.g., Terrell v. Benfer*, 429 F. App'x 74, 77 (3d Cir. 2011), but the burden to establish due exhaustion cannot be shifted to the plaintiff until and unless the defendant makes such a showing. *Oleson v. Bureau of Prisons*, 411 F. App'x 446 (3d Cir. 2011). Finally, when presented with a complaint in which some claims have been exhausted through administrative means but others have not, courts are to proceed only with the claims that have been exhausted and dismiss those that have not been. *See Jones*, 549 U.S. at 219–24 (explaining that the PLRA requires claim-by-claim dismissal, not dismissal of entire action when some claims are not exhausted); *Defreitas v. Montgomery County Correctional Facility*, No. 12-3305, 2013 WL 1878842, at *3 (3d Cir. May 7, 2013).

13

Here, Defendants argue that Plaintiff was obligated to properly exhaust his available administrative remedies as set forth in the New Jersey State Prison's ("NJSP") Inmate Handbook before filing this Complaint. See Hutton Decl., Ex. B. In particular, Defendants state that Plaintiff filed several inmate remedy forms related to his complaints about his medical treatment in the infirmary, which are attached to Ms. Hutton's Declaration at Exhibit C, but Plaintiff did not file a single inmate remedy form regarding his allegations of excessive force, failure to protect and retaliation stemming from the July 9, 2008 incident.

In accordance with *N.J.A.C.* 10A:8–1.1 to 10A:8–3.6, the NJSP has adopted Inmate Handbooks in 2001 and 2007, that set forth the rights and privileges of its inmates at NJSP. The Inmate Handbook also sets forth the inmate grievance procedure at NJSP, which includes the procedures for inmates to submit a complaint, or to bring a problem or suggestion to the attention of the administration at NJSP. The Inmate Handbook is available to inmates at the NJSP law library.

In particular, *N.J.A.C.* 10A:1–4.1 establishes a comprehensive Inmate Remedy System in which inmates may formally communicate with correctional facility staff to request information, and present issues, concerns, grievances, complaints or problems to the correctional facility staff. *N.J.A.C.* 10A:1–4.4(e) provides that an Inmate Remedy System Form ("IRSF") "must be complete, legible and include a clear and concise statement summarizing the request." *N.J.A.C.* 10A:1–4.5(d) provides that an inmate "shall choose either a 'Routine Inmate Request' or an 'Interview Request' to fully exhaust the initial step of the Inmate Remedy System prior to submitting an Administrative Appeal." An inmate may appeal a response after he has exhausted the initial step of the Inmate Remedy System. *N.J.A.C.* 10A:1–4.6(a).

14

The Court has reviewed Plaintiff's inmate remedy forms submitted by Defendants in support of their motion for summary judgment on the issue of non-exhaustion. It appears that Plaintiff filed twenty inmate remedy forms from August 2008 through September 2009. (Hutton Decl., Ex. C.) None of these grievances involved Plaintiff's claims of excessive force, failure to protect and retaliation at issue in this litigation.

Nevertheless, Plaintiff did bring these grievances to the attention of Defendants, and seek administrative remedy, by participating in the administrative disciplinary process and asserting his excessive force, failure to protect and retaliation claims in conjunction with his dispute of the prison disciplinary charges against him. Specifically, Plaintiff actively challenged his disciplinary charges, alleging that Defendants fabricated the incident in retaliation for the 2005 incident of alleged but unproven threats, that Defendants assaulted Plaintiff, and that Defendants failed to protect him from harm. Plaintiff cooperated with a Special Investigations Division ("SID") investigation, in which these grievances were reported to Senior Investigator Salvatore Leto. (*See* Leto Decl., Ex. A.) The disciplinary records provided by Jeffrey Beebe also show that Plaintiff actively complained about his claims of excessive force, failure to protect and retaliation, in response to the disciplinary action issued against him. Plaintiff further appealed the disciplinary action on these same grounds. Thus, in all material respects, Plaintiff exhausted his administrative remedies on these particular claims, albeit, unsuccessfully, even though he did not file Inmate Remedy System Forms relating to his claims.

Consequently, this Court finds that dismissal of this action for failure to fully exhaust administrative remedies is not appropriate because the goals of this requirement have been met. The goals of the requirement include notice, the preservation of evidence, and affording the prison

"a fair opportunity to consider the grievance." *Woodford*, 548 U.S. at 94-95; *cf. Spruill v. Gillis*, 372 F.3d 218, (3d Cir. 2004) ("The purpose of the [grievance process] is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing."). NJSP officials here had the time and opportunity to address Plaintiff's complaints internally, via disciplinary proceedings vigorously challenged by Plaintiff, before he filed this federal action. In addition, as noted, Plaintiff appealed the disciplinary ruling through the proper channels. Therefore, summary judgment is not appropriate in favor of the defendants on this ground. *See Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000) ("[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial."); *Rivera v. Penn. Dept. of Corr.*, 388 F. App'x 107, 108-09 (3d Cir. 2010). *See also Smith v. Hayman*, No. 09-2602 (PGS), 2012 WL 1079634, *15 (D.N.J. Mar. 30, 2012). Ruling otherwise would elevate form over substance, as the purposes underlying the exhaustion requirement have been satisfied.

## D. Excessive Force Claim

Plaintiff alleges that Defendants Myers, Weinstein, Hundt, Labonne, Manera, Pruszinski, Conrey, and Mikus used excessive force against him at SSCF, on July 9, 2008, in violation of his Eighth Amendment right against cruel and unusual punishment. It appears that Plaintiff asserts this claim against these defendants in their individual capacities. Defendants now argue that they are entitled to summary judgment on this claim because Plaintiff cannot establish the requisite elements to support an Eighth Amendment excessive force claim.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 259 (3d Cir. 2010). The principal inquiry in an excessive-force claim is "whether force

16

was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *Nifas v. Coleman*, No. 13-1463, --- F. App'x ----, 2013 WL 2631589, *2 (3d Cir. Jun. 13, 2013). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by" the Eighth Amendment; "[t]he infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319; *In re Bayside Prison Litigation*, 419 F. App'x 301, 304 (3d Cir. 2011).

Several factors must be examined in an Eighth Amendment excessive force inquiry, namely, "the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates, and any efforts to temper the severity of a forceful response." *Nifas, supra* (citing *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)); *see also Whitley*, 475 U.S. at 321; *In re Bayside*, 419 F. App'x at 304.

Importantly, in determining whether the evidence supports Defendants' argument, the Court may not consider any evidence presented by Plaintiff that would be inconsistent with the prison disciplinary decision against him finding him guilty of assault against another person. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (holding that plaintiff may not bring § 1983 claim based on 'actions whose unlawfulness would render a conviction or sentence invalid' unless the conviction had been invalidated); *see also Edwards v. Balisok*, 520 U.S. 641, 643–48 (1997) (applying *Heck* where § 1983 plaintiff had been found guilty in prison disciplinary proceeding);

17

*Jackson v. Gandy*, 877 F. Supp.2d 159, 170 (D.N.J. 2012); *Brown v. Arrayo*, No. 08-2661 (RMB/KMW), 2012 WL 4506550, *3 (D.N.J. Sep. 28, 2012).

In *Jackson*, the district court observed that, in some cases, a § 1983 plaintiff's excessive force claim will not be completely barred because of his prison disciplinary conviction, but the plaintiff will not be permitted to present evidence inconsistent with his conviction. *Jackson*, 877 F. Supp.2d at 170-171. For instance, in *Lora–Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008), the Third Circuit held that the plaintiff's conviction for resisting arrest did not bar his excessive force claim because the officer could have acted with excessive force in response to plaintiff's unlawful conduct. Likewise, in *Gilbert v. Cook*, 512 F.3d 899, 901–02 (7th Cir. 2008), the Seventh Circuit opined that, while a § 1983 plaintiff was bound by a disciplinary hearing finding that he struck a guard, he could still raise claims based on allegations that the guards used unreasonable force after this blow.

More pertinent here, in *Giudice v. County of Atl.*, No. 07–1143, 2008 WL 4934040, *4 (D.N.J. Nov. 13, 2008), the district court found that while the court could not consider "[p]laintiff's claim that the attack on him was completely unprovoked because this claim is inconsistent with the disciplinary finding that [p]laintiff was guilty of attempt to assault [,]" the Court could consider Plaintiff's claims as to "the genuine issue of material fact regarding the relationship between the amount of force used and the need for force." *Id.* at *4. These persuasive authorities lead the Court to credit Plaintiff's version of the facts, for purposes of this summary judgment motion, insofar as his version does not contradict the basis for his underlying prison administrative conviction, since that conviction was never reversed or otherwise impaired.

Here, in Plaintiff's prison disciplinary hearing, Plaintiff was found guilty of (1) assaulting

another person, (2) conduct which disrupts or interferes with the security or orderly running of the correctional facility, and (3) misuse of authorized medication. (Beebe Decl., Ex. A, DOC JENKINS 148, 153, 158.)   Therefore, to the extent that Plaintiff alleges the force used against him was entirely unprovoked, the Court may not consider such an allegation as it would contradict the disciplinary record.   However, as the courts did in *Jackson* and *Giudice*, this Court shall consider whether Plaintiff has set forth sufficient facts from which a jury could conclude that Defendant Officers Myers, Hundt, Pruszinski, Conrey, Weinstein, Labonne, Manera and Sgt. Mikus used excessive force in responding to Plaintiff's conduct.

At Plaintiff's deposition, Plaintiff plainly testified as to the alleged excessive force.   For instance, he testified that during the pat frisk, Plaintiff had his hands up, and Defendant Myers wrapped around Plaintiff's waist, picked Plaintiff up and tried to "slam [Plaintiff] backwards." (Conforti Decl., Ex. B, Transcript of Plaintiff's March 20, 2012 Deposition ("Plaintiff's Dep. Tr. 89:9-24; 90:5-14.)   Plaintiff also stated Defendant Weinstein kicked him in the face while being held down by Myers, and that both Weinstein and Hundt were giving Plaintiff "shots to the face and to the body," while Plaintiff was trying to guard his face with his hands to block these punches. Plaintiff further testified that he tried to keep in a fetal position to protect his face and body from these blows.   (*Id.*, 94:13-15; 95:1-9; 95:25-96:23.)   Plaintiff additionally stated that Defendants were using their fists and feet to repeatedly hit Plaintiff, and that there was a several minute interval when they stopped because Plaintiff was covering himself and the officers waited until they could get more shots at Plaintiff.   Plaintiff noted that, during this several minute interval, the officers were talking to other inmates.   (Id., 98:4-25.)

Plaintiff then testified that the other Defendants responding to the Code 33 came at him,

19

hitting him with a boot, and jumping on Plaintiff while Plaintiff tried to remain in a fetal position on the ground to protect himself.  Plaintiff stated that there was no effort to talk to Plaintiff; rather, "they trying [were trying] to peel my arms from my face.  As soon as they get an opening, punching me.  Boom, boom, boom.  It was just a straight up attack.  It wasn't no, we trying to cover you, give me your hand and all of that.  Back up, watch out.  It was none of that."  (*Id.*, 100:18-101:11.)  Plaintiff further testified that he "was being punched, stomped and one time I got rolled over. ... Myers had my head and was banging my head on the floor like that.  Both of his hands just banging my head on the floor.  Because other officers had my arms and legs.  I couldn't do nothing."  (*Id.*, 106:8-13.)

Plaintiff also stated that he did not resist being handcuffed.  After Plaintiff was handcuffed, he further asserted in his deposition, Defendants raised him in the air, holding him by his arms and feet, and "[t]hen one officer stepped in front of [Plaintiff] while [Plaintiff] was being held in the air and punched [Plaintiff] with like four uppercuts."  (*Id.*, 107:2-20.)  Then, after Plaintiff was restrained and being carried in the air, Defendants rammed Plaintiff's head through a door and slammed his head into the ground outside.  (*Id.*, 111:10-114:17.)

Plaintiff also says that he lost consciousness momentarily during the attack, and that Defendant Mikus rammed his head into another door a second time as Plaintiff was carried out of the trailer.  (*Id.*, 118:6-121:8.)

The medical records also confirm Plaintiff's injuries of lacerations to the head, swollen eyes and head, laceration to his left eyebrow, and a broken nose, each of which would be consistent with Plaintiff's testimonial version of the incident.  (Woodward Decl. Ex. A, DOC JENKINS 167, 534, 535.)  While Defendants argue that Plaintiff's injuries are *de minimis* in nature, Plaintiff

has presented sufficient evidence to place that issue before the finder of fact. *See Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (explaining *de minimis* nature of injuries may cast doubt on prisoner's account of the incident but that is an issue of fact to be resolved by the fact finder based on all of the evidence); *see also Evans v. Cameron*, 442 F. App'x 704, 708 (3d Cir. 2011) ("*de minimis* injuries do not necessarily establish *de minimis* force," and the issue of whether a prisoner's injuries were so minor such that the defendants' account of the issue is more credible than the prisoner's account, "is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide."). Thus, based on Plaintiff's testimony at his deposition, as well as Plaintiff's account of the incident reported to Senior SID Investigator Salvatore Leto (Leto Decl., Ex. A), the Court finds there to be a genuine issue of material fact as to whether the force used to subdue Plaintiff was excessive and in violation of Plaintiff's Eighth Amendment rights. *See, e.g., Jackson*, 877 F. Supp.2d at 171-172. *See also Giles v. Kearney*, 571 F.3d 318, 327 (3d Cir. 2009) (correctional officer defendants not entitled to summary judgment on excessive use of force claim where plaintiff "testified that he was hit and kicked while restrained on the ground, after he ceased to resist"); *Mensinger*, 293 F.3d at 649 ("Punching and kicking someone who is handcuffed behind his back ... is repugnant to the conscience of mankind, absent the extraordinary circumstances necessary to justify that kind of force.") (citation omitted); *Shelton v. Bledsoe*, No. 12-1532, 2013 WL 1731351, *2-3 (3d Cir. Apr. 23, 2013) (denying summary judgment on issue concerning the use of force based on plaintiff's testimony in which he stated that he was assaulted while fully restrained on the ground with his hands cuffed behind his back) .   Accordingly, the Court denies Defendants' motion for summary judgment with regard to Plaintiff's excessive force claim.

21

E. Failure to Protect Claim

Next, Defendants argue that they are entitled to summary judgment with respect to Plaintiff's claims of failure to protect/intervene in violation of his Eighth Amendment rights. First, Plaintiff alleges that Defendant Wernik knew about the incident before it happened, but did nothing to protect Plaintiff from harm. Namely, Plaintiff testified that Wernik had spoken to Plaintiff about seeking protective custody while at SSCF because of the alleged threats Plaintiff purportedly made against correctional officers in 2005. Plaintiff declined to be placed in protective custody, and alleges that Wernik insinuated that he could not protect Plaintiff from other rogue officers. Consequently, Plaintiff argues that Defendant Wernik knew the other Defendants were going to assault him but did nothing to prevent it, in violation of Plaintiff's Eighth Amendment rights. (Conforti Decl., Ex. B, 30:22-32:17.)

Plaintiff makes similar assertions against Defendant Errickson, alleging that Errickson fabricated a five day loss of recreation time for Plaintiff upon Plaintiff's arrival at SSCF, knowing that the assault was going to take place thereafter, but did not to stop it. (*Id.*, 32:20-33:8.)

To succeed on an Eighth Amendment claim for failure to protect, a plaintiff must show that: (1) "he is incarcerated under conditions posing a substantial risk of serious harm;" and (2) prison officials operated with "deliberate indifference to [his] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *Wallace v. Doe*, No. 12-3926, 2013 WL 363484, *3 (3d Cir. Jan. 31, 2013). A substantial risk of serious harm "may be established by much less than proof of a reign of violence and terror," but requires more than a single incident or isolated incidents. *See Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985).

22

To determine whether officials operated with deliberate indifference, courts question whether they consciously knew of and disregarded an excessive risk to the prisoner's well-being. *Farmer*, 511 U.S. at 840–44; *Hamilton*, 117 F.3d at 747. Not only must a prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the official "must also draw the inference." *Farmer*, 511 U.S. at 837; *Wallace*, 2013 WL 363484 at *3. "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol*, 256 F.3d at 133; *Jones v. Day*, 2007 WL 30195, at *3 ("[i]t is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known"). *See also Jones v. Beard*, 145 F. App'x 743, 745 (3d Cir. 2005).

Here, Plaintiff cannot establish an essential element of his failure to protect claim against Erickson and Wernik, namely, that these Defendants knew of a substantial risk of serious harm to Plaintiff yet acted with deliberate indifference in failing to prevent this harm. Plaintiff's allegations in this regard are merely self-serving and disputed by the record, which shows that Plaintiff had initiated the July 9, 2008 incident by elbowing Myers in the head and trying to hide unauthorized pills from Myers during a pat frisk. There is no evidence to suggest that Wernik or Erickson knew that Plaintiff would assault Myers or that they were aware that Plaintiff had medication which was not authorized for him. Moreover, because these disciplinary charges against Plaintiff were never invalidated, Plaintiff is precluded from asserting that he did not first assault Myers, which was the impetus for the resulting force used by Defendants against Plaintiff.

Therefore, this Court grants summary judgment in favor of Defendants Wernik and Erickson on this Eighth Amendment failure to protect claim.

Plaintiff also appears to allege an Eighth Amendment failure to intervene claims against Defendants Labonne, Manera, Pruszinski, Conrey and Mikus. The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, as well as at the hands of guards or other state actors. *Farmer*, 511 U.S. at 833. Further, the Third Circuit has held that "[t]he restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs." *Evans*, 442 F. App'x at 706 (quoting *Mensinger*, 293 F.3d at 651). Thus, "a corrections officer's failure to intervene in a beating can be the basis for liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and refused to do so." *Mensinger*, 293 F.3d at 650.

However, in order for liability to attach under § 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his presence or with his knowledge; and (2) there was a realistic and reasonable opportunity to intervene. *Id.* at 651; *see also Nifas*, 2013 WL 549089 at *14; *Crawford v. Beard*, No. 04–0777, 2005 WL 139082, at *5 (E.D.Pa. Jan.19, 2005), *aff'd*, 173 F. App'x 176 (3d Cir. 2006). "For there to be a failure to intervene, it follows that 'there must exist an underlying constitutional violation.'" *Santiago v. Fields*, No. 05–4884, 2009 WL 693642, at *4 (E.D.Pa. Mar.12, 2009) (quoting *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)).

Plaintiff's failure-to-intervene claim differs from Plaintiff's failure to protect claim in that it is predicated on whether the correction officers' use of force was excessive, whereas the failure to protect claim centers on whether Sgt. Erickson and SCO Wernick knew that Plaintiff would require restraint on account of his own aggressive conduct yet deliberately refused to act. Accordingly, because this Court has concluded that issues of material fact exist to preclude summary judgment on Plaintiff's excessive force claim, the Court similarly concludes that the record reveals issues of material fact as to whether Defendants observed unconstitutional conduct in the effort to subdue Plaintiff, had a realistic opportunity to intervene during the altercation, and failed to do so. *Accord Diaz v. Aberts,* No. 10-5939, 2013 WL 420349, *8 (E.D.Pa. Feb. 4, 2013) (denying summary judgment because record revealed issues of material fact to preclude summary judgment on the excessive force claim, and that these same issues of material fact applied as well to whether defendant had a realistic opportunity to intervene and failed to do so); *Cooper v. Roberts,* No. 08–346, 2009 WL 2996479, *5 (E.D.Pa. Sept. 16, 2009)(same); *see also Smith v. Donate,* No. 10–2133, 2012 WL 3537017, at * 14 (M.D.Pa. June 15, 2012)(same), *report and recommendation adopted*, No. 10–2133, 2012 WL 3537008, at *6 (M.D.Pa. Aug. 15, 2012).

Therefore, this Court denies the motion of Defendants Labonne, Manera, Pruszinski, Conrey and Mikus, for summary judgment, on the failure to intervene claim because, to the extent that a jury may conclude that Defendants employed excessive force under the circumstances, genuine issues of material fact also exist for the jury to determine whether these Defendants were in a position to intervene and, if so, whether they acted reasonably in failing to do so.

25

F.  Denial of Medical Care Claim

Defendants also argue they are entitled to summary judgment on Plaintiff's denial of medical treatment claim.  In order to succeed on an Eighth Amendment claim for failure to provide adequate medication treatment, an inmate must show that prison officials were deliberately indifferent to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Afdahl v. Cancellieri*, 463 F. App'x. 104, 107 (3d Cir. 2012).  "Only 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation."  *White v. Napoleon*, 897 F.2d 103, 108–09 (3d Cir. 1990) (quoting *Estelle*, 429 U.S. at 103).

In other words, to prove a delay or denial of medical care claim, Plaintiff must show (1) that his medical needs are serious and (2) that defendants were deliberately indifferent to [his] medical needs.  *Pierce v. Pitkins*, No. 12-4083, 2013 WL 1397800, *1 (3d Cir. Apr. 8, 2013) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).  The Third Circuit has defined the first element of serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."  *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted).

The second element, deliberate indifference, requires proof that the official knew of and disregarded an excessive risk to the prisoner's health or safety.  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The Third Circuit observes deliberate indifference in situations where a prison official: "(1) knows

of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.

Moreover, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden County*, 95 F. Supp.2d 217, 228 (D.N.J. 2000). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979) (internal quotation and citation omitted). Thus, even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.3d at 110. *See also Szemple v. Univ. of Med. & Dentistry*, 451 F. App'x 187, 191 (3d Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)).

Here, the record reflects that Plaintiff received prompt medical treatment for his injuries. Thus, the undisputed facts demonstrate that there was no constitutional violation; the facts could not support a finding of either deliberate indifference or a serious medical need. *See Brooks*, 204 F.3d at 105 n. 4. For instance, the record establishes that Defendant Headley, a nurse, promptly evaluated Plaintiff following the incident that same day,[2] after Plaintiff was taken to a larger holding cell and acquiesced to Nurse Headley's examination. (Beebe Decl., DOC JENKINS 167.) At that time, Nurse Headley observed swelling to Plaintiff's head, a three to four inch laceration on his scalp, and swelling and bruising to Plaintiff's left eye. (*Id.*) Headley also lifted

---

[2]   At first, Plaintiff had been uncooperative when he had been transported to the first holding cell, and he would not allow Nurse Sweeney to conduct a visual examination due to "violent behavior." (Woodward Decl., Ex. A, DOC JENKINS 536.)

Plaintiff's t-shirt and observed a small circular abrasion on his left shoulder.  (*Id.*)  Headley then treated Plaintiff's lacerations and reported her findings to the on-call physician, Dr. Nwachukwu, who medically cleared Plaintiff for transport to NJSP.  (*Id.*)   Headley's notations on her examination and treatment of Plaintiff were documented in Plaintiff's "EMR."  (*Id.*)

When Plaintiff arrived at NJSP that same day, July 9, 2008, he was taken to the infirmary, where the same injuries were noted and confirmed.  (Woodward Decl., Ex. A., DOC JENKINS 534, 535.)  The next day, July 10, 2008, Dr. Abu Ahsan examined Plaintiff and recorded "superficial lacerations and abrasions" on Plaintiff's scalp.  (*Id.*, DOC JENKINS 528.)  On July 11, 2008, Dr. Ahsan diagnosed Plaintiff with a possible nasal fracture and ordered x-rays for Plaintiff's nose and hand.  The x-ray confirmed a nasal fracture, non-displaced, that did not require further intervention.  (Id., DOC JENKINS 515, 462.)

Further, while Plaintiff was confined at the NJSP infirmary, he received ongoing care and monitoring by the medical staff every three to four hours each day.  He also received pain medication, such as Tylenol, Motrin, and acetaminophen-codeine for his complaints of leg and back pain.  (*Id.*, DOC JENKINS 533-443.)  Thus, while Plaintiff may believe that his medical care was insufficient, there is no indication that Defendants were deliberately indifferent to his medical needs, and there is no evidence that Defendant Headley failed to provide medical treatment to Plaintiff as needed.  At most, the evidence suggests that Plaintiff is dissatisfied with this care, and appears to simply disagree with the medical care rendered.  As stated above, federal courts generally will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment [,] which remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail*, 612 F.2d at 762 (internal alterations, quotation marks omitted).

Therefore, this Court finds that Defendant Headley is entitled to summary judgment on this denial of medical care claim as asserted against her by Plaintiff. *See Freeman v. Department of Corrections*, 447 F. App'x 385, 389 (3d Cir. 2011). *See also Banks v. Mozingo*, 423 F. App'x 123, 127 (3d Cir. 2011).

Plaintiff also appears to assert that Defendant, Sgt. Flickinger, who was present at Nurse Headley's examination of Plaintiff, had impeded and interfered with medical documentation and treatment.[3]  The evidence does not support Plaintiff's allegation.   In fact, Headley had completed a post-incident report, along with her medical notes, which confirmed that Plaintiff's allegations of Sgt. Flickinger's interference were "not factual," and that she recorded all injuries she observed regarding Plaintiff.  (Beebe Decl., DOC JENKINS 167.)   Accordingly, there is no evidence that Sgt. Flickinger deliberately interfered with Plaintiff's receipt of necessary medical treatment, and summary judgment should be granted in favor of Sgt. Flickinger accordingly. *See Dockery v. Beard*, No. 12-3317, 2013 WL 139624, *4 (3d Cir. Jan. 11, 2013).

G.   Retaliation Claim

Petitioner also asserts that Defendants used excessive force during the July 9, 2008 incident as a means of retaliating against him for an alleged incident that took place in 2005, in which Plaintiff purportedly threatened SSCF correctional officers with harm.  In his March 20, 2012 deposition, Plaintiff confirmed that this is his only claim of retaliatory conduct by the named Defendants in this action.  (Conforti Decl., Ex. B, 171:17-172:1; 173:14-18.)  Defendants now argue that they are entitled to summary judgment on this claim because Plaintiff fails to satisfy the requisite elements for a § 1983 retaliation claim.

---

[3]    Although Plaintiff did not list Sgt. Flickinger in the caption of his complaint, it appears from the text of the complaint that he is challenging Flickinger's conduct.

To support a retaliation claim, Plaintiff must show that the conduct provoking the alleged retaliation was constitutionally protected, that he suffered some "adverse action" at the hands of the prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights," and that the constitutionally protected conduct was a substantial motivating factor in Defendants' conduct. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted). *See also Smith v. Hayman*, 489 F. App'x 544, 548 (3d Cir. 2012); *Monroe v. Phelps*, No. 12-3489, 2013 WL 1397820, *2 (3d Cir. Apr. 8, 2013). If Plaintiff can establish a *prima facie* case of retaliation, then the burden shifts to Defendants "to demonstrate that even without the impetus to retaliate he would have taken the action complained of." *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *Monroe*, supra.

This Court finds that, even if Plaintiff can show that Defendants' action against him on July 9, 2008 was an "adverse action" against Plaintiff for the alleged 2005 threats, Plaintiff cannot show that he had engaged in a constitutionally protected activity, or that his conduct was a substantial motivating factor in Defendants' decision to subdue and restrain Plaintiff during the July 9, 2008 altercation.

First, Plaintiff cannot dispute the impetus for the July altercation, namely, that he was observed trying to hide an object and that he had struck Defendant Myers in the head during the pat frisk, because the prison disciplinary decision against him in this regard has not been overturned. *See Edwards*, 520 U.S. at 643-48; *Jackson*, 877 F.Supp.2d at 170. It was determined in his prison disciplinary proceeding that Plaintiff did assault Defendant Myers and that he had misused authorized medication. Neither his possession of medication nor his striking of Defendant Myers constitutes constitutionally protected activity. As Plaintiff cannot show that he was engaged in a

constitutionally protected activity, he cannot satisfy a necessary requirement for establishing a retaliation claim.  *See Rauser, supra.*

Moreover, Plaintiff cannot show the third element of a retaliation claim.   The substantial motivating factor for the alleged "adverse action," the officers' assault on Plaintiff, was Plaintiff's assault on Myers and his conduct in hiding the pills.   Moreover, Plaintiff cannot prove that the 2005 incident, which he alleges was the substantial motivating factor, was the true purpose for the officers' efforts to subdue him because Plaintiff was adjudicated guilty for assault of Myers, which finding has not been invalidated, and the officers would have responded in subduing Plaintiff because of Plaintiff's unauthorized conduct *regardless of the 2005 incident*.

Therefore, this Court concludes that Defendants are entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff cannot prove two of the three necessary elements to establish retaliation.

H.  Supervisor Liability

Plaintiff brings this action against George Hayman, the Commissioner of the NJDOC, asserting a claim that appears to be based on a theory of supervisor liability. As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983).   Supervisor liability requires a showing of personal involvement in the alleged wrongs.  *Bayete v. Ricci*, 489 F. App'x 540, 543 (3d Cir. 2012).

Here, Plaintiff provides no facts describing how the supervisory Defendant Hayman actively or affirmatively violated his constitutional rights, i.e., he fails to allege facts to show that Hayman expressly directed the deprivation of his constitutional rights, or that Hayman created

31

policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation. At best, it would appear that Plaintiff is alleging that Hayman became aware of the July 9, 2008 incident via Plaintiff's grievances asserted during his prison disciplinary proceedings arising from the same incident. However, participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) (finding the receipt of a grievance insufficient to show the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (per curiam) (allegations of inappropriate response to grievances does not establish personal involvement required to establish supervisory liability). Accordingly, this Court will grant summary judgment in favor of defendant Hayman.

I. Punitive Damages

Finally, Defendants seek summary judgment on Plaintiff's claim for punitive damages. For such a claim, a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Allah v. Al–Hafeez*, 226 F.3d 247, 251–52 (3d Cir. 2000); *Artis v. McCann*, No. 11-3613, 2013 WL 2481251, *6 (D.N.J. Jun. 10, 2013). Punitive damages should not be awarded unless defendants' conduct has been "particularly egregious" with defendants having acted with actual knowledge that they were violating a federally protected right or with reckless disregard of whether they were doing so. *Conchetti v. Desmond*, 572 F.2d 102, 105–106 (3rd Cir. 1978).

32

In the present case, this Court found there was sufficient dispute as to material issues of fact regarding Plaintiff's excessive force and failure to intervene claims. Plaintiff's deposition testimony and other evidence may permit a jury to find that Defendants may have acted with the requisite malice, intent, and evil thought described above as cause for awarding punitive damages. Therefore, summary judgment as to this issue will be denied.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment with respect to the claims of retaliation, denial of medical care (as asserted against Defendants Headley and Flickinger), and failure to protect (as asserted against Defendants Wernik and Erickson). In addition, summary judgment will be granted in favor of Defendants on all claims brought against them in their official capacities and which are barred by Eleventh Amendment immunity. Defendant Hayman is granted summary judgment because Plaintiff's claim against him is impermissibly based on supervisor liability. However, Defendants' motion for summary judgment based on Plaintiff's alleged failure to exhaust administrative remedies will be denied. Likewise, summary judgment in favor of Defendants Myers, Weinstein, Hundt, Labonne, Manera, Pruszinski, Conrey, and Mikus, on Plaintiff's claims asserting use of excessive force, failure to intervene, and for punitive damages on these two claims, will be denied. An accompanying Order is filed herewith.

MICHAEL A. SHIPP
United States District Court